IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RACHEL M McNAUGHTON,     )<br>    Plaintiff,                              )<br>                                                    )<br>v.                                                )<br>                                                    )<br>CAROLYN W. COLVIN, Acting  )<br>Commissioner of Social Security, )<br>    Defendant.                         ) | CIVIL ACTION NO. 16-00268-N |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rachel M McNaughton has brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*  With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73.  (*See* Docs. 18, 19).

Upon consideration of the parties' briefs (Docs. 13, 14) and those portions of the administrative record (Docs. 11, 12) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, and with the benefit of oral argument held January 9, 2017, the Court finds that the Commissioner's final decision is due to be **AFFIRMED** under sentence four of §

405(g).

## I.  Background

On January 25, 2013, McNaughton filed applications for a period of disability, DIB, and SSI with the Social Security Administration ("SSA"), alleging disability beginning August 1, 2012.[1] After her applications were initially denied, McNaughton requested a hearing before an Administrative Law Judge ("ALJ") for the SSA; hearings were held on April 17 and August 28, 2014.  On December 1, 2014, the ALJ issued an unfavorable decision on McNaughton's applications, finding her "not disabled" under the Social Security Act and thus not entitled to benefits.  (*See* R. 15 – 32).

The Commissioner's decision on McNaughton's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied McNaughton's request for review of the ALJ's decision on May 12, 2016.  (R. 1 – 5).  On June 7, 2016, McNaughton filed this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision.  (Doc. 1).  *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security

---

[1]  DIB provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.  *See* 42 U.S.C. § 423(a).  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.  Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).

"For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005).  For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.  20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   Standards of Review

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in

original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.'" *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the

administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence.

*Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[2]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[3]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)).

---

[2] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[3] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)).

"This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). If the applicant attacks only the ALJ's decision, the Court may not consider evidence that was presented to the Appeals Council but not to the ALJ. *See id.* at 1324.

### III.   Analysis

At Step Five, "the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). Essentially, the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. If the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled." *Phillips*, 357 F.3d at 1239 (footnote omitted). Here, in

making his determination at Step Five, the ALJ relied on the testimony of a vocational expert (VE).[4] (R. 28). When asked "whether jobs exist in the national economy for an individual with [McNaughton]'s age, education, work experience, and residual functional capacity," the VE "testified that given all of th[o]se factors the individual would be able to perform the requirements of representative light, unskilled (SVP2) occupation as house sitter (Dictionary of Occupational Titles 309.367-010), of which there are more than 750,000 jobs exist [sic] in the national economy." (R. 28). Concluding that the VE's testimony "is consistent with the information contained in the Dictionary of Occupational Titles[,]" the ALJ found, "[b]ased on the testimony of the vocational expert," that McNaughton was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 28).

McNaughton offers two reasons why she believes substantial evidence does not support the ALJ's Step Five determination.[5] First, McNaughton argues that the

---

[4] "There are two avenues by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy. The first is by applying the Medical Vocational Guidelines … The other means by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy is by the use of a vocational expert. A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. []When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1239–40.

[5]     In her brief, McNaughton appeared to argue that a VE's testimony cannot constitute substantial evidence where, as here, the VE identifies only a single occupation that the claimant is capable of performing. However, at oral argument,

VE's testimony regarding the number of jobs available nationally for the occupation of "house sitter" is not reliable because the private computer program Job Browser Pro by SkillTRAN reports "only 815 full time jobs in the national economy, 3 full time jobs in the state of Alabama, and 'N/A' for the Mobile, Alabama region" for the DOT code for "house sitter." (Doc. 13 at 4). McNaughton represents that the "date source for Job Browser Pro … is the U.S. Department of Labor, Dictionary of Occupational Title 4th Edition, Revised (1991), (including subsequent amendments by the U.S. Department of Labor)." (*Id*. n.1). However, even assuming that the

---

McNaughton conceded that the existence of a single such occupation can satisfy the Commissioner's burden at Step Five. See 20 C.F.R. §§ 404.1566(b), 416.955(b) ("Work exists in the national economy when there is a significant number of jobs (***in one or more occupations***) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." (emphasis added)).

     McNaughton does not raise any claims of error as to Steps One through Four. Generally, claims of error not raised in the district court are deemed waived. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 – 16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court … Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, No. 16-11238, 2016 WL 7321208, at *2 (11th Cir. Dec. 16, 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

VE's testimony did not accurately reflect the DOT,[6] binding precedent in this Circuit holds "that when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." *Jones v. Apfel*, 190 F.3d 1224, 1229–30 (11th Cir. 1999). *See also Jones v. Comm'r of Soc. Sec.*, 423 F. App'x at 939 (11th Cir. 2011) (per curiam) (unpublished) ("Even assuming arguendo that the ALJ incorrectly found that the VE's testimony was consistent with the DOT, such error was harmless. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error analysis to ALJ's incorrect statements that were irrelevant to whether claimant had a severe impairment). In this Circuit, a VE's testimony trumps the DOT to the extent the two are inconsistent. *See Jones*, 190 F.3d at 1229–30. The VE opined that the ALJ's hypothetical person could perform these three jobs. The ALJ was permitted to base his findings about these three jobs exclusively on the VE's testimony, irrespective of any inconsistency with the DOT, and was not required to seek further explanation. *See id.*");[7] *Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012) (per curiam) (unpublished) (similar).

---

[6] Though not deciding the issue, the undersigned notes that the Eleventh Circuit has found 840 jobs in the national economy to be a significant number supporting an ALJ's Step Five determination. *See Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005) (per curiam) (unpublished).

[7] The undersigned notes "SSR 00–4p … provides that '[n]either the DOT nor the [VE's testimony] automatically "trumps" ' and instructs the ALJ to 'elicit a reasonable explanation' for a conflict between the two before relying on the VE's testimony. SSR 00–04p, 2000 WL 1898704 (Dec. 4, 2000). Social Security Rulings are not binding on this Court. *See B.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. Unit B Apr.1981); *see also Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir.1982) (providing that we are bound by decisions issued by Unit B panels of the former Fifth Circuit). To the extent SSR 00–4p conflicts with *Jones*, we are bound by *Jones*." *Jones v. Comm'r of Soc. Sec.*, 423 F. App'x at 939 n.4.

Accordingly, the ALJ did not err in relying on the VE's testimony as to the numbers of jobs existing in the national economy.

Second, McNaughton, again relying on the data provided by Job Browser Pro for the "house sitter" occupation, appears to assert that the ALJ's Step Five determination cannot rest solely on the "house sitter" occupation because there is no proof that such jobs exist in the Mobile, Alabama region where McNaughton resides. The Social Security regulations, however, do not require jobs to exist in the region where a claimant resides in order for the ALJ to determine that they exist in the national economy in significant numbers. *See* 20 C.F.R. §§ 404.1566(a)(1), 416.966(a)(1) ("We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether [w]ork exists in the immediate area in which you live.").[8]

Accordingly, the Court **OVERRULES** McNaughton's claims of reversible error at Step Five and finds that the Commissioner's final decision denying her benefits is due to be **AFFIRMED**.

### IV.   Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the

---

[8] At oral argument, counsel for McNaughton pointed out that the VE's testimony appeared to classify "house sitter" as a part-time, rather than full-time, job. However, upon review of the hearing transcript, the undersigned agrees with the Commissioner that the VE subsequently clarified his testimony to state that while a house sitter might work at a particular house for infrequent intervals, the sitter would still be employed on a full-time basis for a company. (R. 67 – 68). Counsel for McNaughton did not press the issue further, and the undersigned finds no reason to disturb the ALJ's Step Five determination on this basis.

Commissioner's May 12, 2016 final decision denying McNaughton's applications for a period of disability, DIB, and SSI is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).  Final judgment shall issue separately in accordance with this Order and Federal Rule of Civil Procedure 58.

    **DONE** and **ORDERED** this the 10th day of January 2017.

                                    */s/ Katherine P. Nelson*
                                    **KATHERINE P. NELSON**
                                    **UNITED STATES MAGISTRATE JUDGE**